Filed 12/27/22  P. v. Thomas CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RONALD THOMAS,<br><br>Defendant and Appellant. | F083089<br><br>(Super. Ct. No. PCF376701)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Antonio A. Reyes, Judge.

Stephen M. Hinkle, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Sally Espinoza, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

Defendant Ronald Thomas annoyed two girls under the age of 18 years in a park Porterville. Defendant also failed to update his sex offender registration after being evicted from his residence approximately two months prior. A jury convicted defendant of annoying and molesting a child after having been convicted of three prior sex crimes and failing to register as a sex offender within five days of becoming transient. The trial court denied defendant's motion to strike his prior convictions and sentenced him to consecutive terms of 25 years to life in prison on each count.

Defendant argues that (1) his conviction on count 1 is not supported by sufficient evidence, (2) the trial court abused its discretion in admitting evidence of his prior sex crime convictions, (3) the prosecutor committed misconduct in closing argument, (4) Evidence Code section 1108 violates the due process and equal protections clauses of the state and federal Constitutions, (5) defendant's 50-year-to-life prison term violates both state and federal guarantees against cruel and unusual punishment, and (6) the trial court erred in assessing fines and assessments without determining if defendant had the ability to pay them.

We affirm.

**PROCEDURAL BACKGROUND**

The District Attorney of Tulare County filed a second amended information on May 10, 2021, charging defendant with annoying or molesting a child under the age of 18 years with a prior felony conviction (Penal Code,[1] § 647.6, subd. (c)(2); count 1),[2] failing to register as a sex offender upon changing residence (§ 290.013, subd. (a); count 2), and, as to both counts, having three prior "strike" convictions within the

---

[1]    Undesignated statutory references are to the Penal Code.

[2]    The second amended information alleged that defendant had been convicted in Arkansas of rape, sexual abuse in the first degree, and sexual solicitation of a child in 1996.

meaning of the "Three Strikes" law (currently codified at §§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)). Defendant pleaded not guilty to the charges and denied all allegations.

The jury convicted defendant of both counts on May 21, 2021, after a five-day trial. After defendant waived his right to a jury trial regarding his prior convictions, the trial court found the allegations to be true. The trial court denied defendant's third motion to strike his prior convictions[3] and sentenced defendant to consecutive terms of 25 years to life on both counts (§ 1170.12, subd. (c)(2)(C)(ii) & (iv)). The trial court found that defendant did not have the ability to pay a $6,000 restitution fine (as recommended by the probation office) and ordered defendant to pay the reduced amount of $3,000 as to both the restitution fine (former § 1202.4, subd. (b)) and the suspended parole revocation restitution fine (§ 1202.45), recognizing that defendant would find employment in prison. The trial court also ordered defendant to pay a $300 habitual sex offender fine (§ 290.3), $60 in criminal conviction assessments (Gov. Code, § 70373), and $80 in court operations assessments (§ 1465.8).

Defendant timely appealed on July 20, 2021.

## FACTS

Fifteen-year-old H.J.[4] and 13-year-old C.H. (the victims) regularly visited a park in Porterville at the same time after school. On February 19, 2019, the victims were in the park skateboarding and walking around. They saw defendant, who was alone and sitting in his parked, white van. They went to sit on a bench because C.H.'s knee was hurting.

H.J. bent over to pick up her skateboard with straight legs, which caused her butt to face the white van. Defendant was looking at both girls from his driver's side window and started clapping, catcalling, and making sexual comments when H.J. bent over. H.J.

---

[3]     The court denied defendant's two such motions that were filed before trial.

[4]     H.J. turned 15 years old the day before this incident.

testified that when she bent over, defendant whistled and catcalled, "like woo," or "woo, woo." When H.J. straightened up, defendant started clapping and then told them they were cute. Defendant had his head out of the van when he made the comments. Other people were in the park, but no one was close to the victims.

After defendant's comments, H.J. was scared and anxious because defendant was a stranger and an "old man" while they were "young teenage girls," and she did not know what was going to happen. H.J. testified C.H. called the police because they were "weirded out." C.H. testified that she was scared and decided to call the police because it had been happening every day and she wanted to be able to feel safe at the park. C.H. called 911 and told the dispatcher that defendant had been making sexual comments to them, referring to his statements that they were hot and pretty, which she also described as inappropriate. The victims walked from the area to get away from defendant and waited until the police arrived.

H.J. recalled that the white van parked there "daily." C.H. testified that defendant had been there every day for three to four weeks. Defendant had previously made other comments that made H.J. feel "[w]eird," but she was unable to recall his exact words. C.H. testified that defendant whistled, catcalled and made such comments for a week before finally calling the police, and defendant made her scared and uncomfortable. Defendant would tell them they were cute, hot, and pretty. Defendant was always in his van, except once when he approached them and asked for a lighter.

Officer Michael Benas from the Porterville Police Department responded to the park at 4:55 p.m. The van was registered to defendant, and Benas had ascertained that defendant was registered as a sex offender. Benas saw defendant in the driver's seat of the van, which faced the playground area. Benas saw a pair of green binoculars on the front passenger seat next defendant and two chocolate chip cookies on the front of the van, "on top of the van near the window." Defendant had a mattress, bags, tools, and clothing in the back of the van. After contacting the victims, Benas arrested defendant.

4.

The prosecutor read the parties' stipulation into the record as follows: "In [c]ase [No.] CR 96-645[,] [ ] defendant was convicted of three felony sex offenses involving children under the age of 14 years old[,] which requires him to register as a sex offender."

Porterville Police Department maintains a file for each sex offender registrant and forwards each registration to the Department of Justice that maintains the database. Corporal Orlando Ortiz testified that he was the sole administrator responsible for registering sex offenders within the department's jurisdiction. The State of California requires sex offenders to register their residence within the county or city where they are residing. A sex offender is required to initially register their residence or transient status and then reregister annually. A sex offender who is transient and without a regular residence must register as such and update their registration every 30 days. A sex offender who changes residence must update their registration within five days. Information received from the sex offender is updated in the database within 72 hours of receipt.

Defendant completed his initial registration on April 11, 2018. Ortiz met with defendant and reviewed the contents of the registration form with him. The form describes each registration requirement and has a space for the registrant to acknowledge that they have read and understood each requirement. Defendant initialed each registration requirement and signed the completed form. Defendant also completed a form used to update his registration. The form indicates the reason for the update, whether it be an annual registration, transient status, or change of address. Defendant updated his registration by listing his address at a rescue mission. This form also advised defendant of the registration requirements and had a space for defendant to acknowledge having read and understood the requirements, which he initialed and then signed the completed form.

Defendant executed an annual registration on June 27, 2018, at the Porterville Police Department, which is due each year by defendant's birthday. Defendant identified

both the rescue mission and his mother's address as residences and acknowledged that he read and understood each registration requirement. On September 5, 2018, defendant executed a registration that updated his address to another residence on the same street as his mother's residence. This was last time defendant registered with the Porterville Police Department.

The owner and an occupant of defendant's last known residence both testified that defendant originally moved into a room in the residence in September 2018 and was evicted on January 1, 2019. The owner saw defendant's van parked at the park thereafter. Ortiz testified that defendant was required by law to register his new residence or his transient status within five days of January 1, 2019, but defendant did not.

Defendant testified that at the time of the offense, he was homeless and had been living in his van for approximately one month. At night, defendant parked his van with other transients in front of a store parking lot near the park. Defendant parked his van at the park during the day because the park was located between the store parking lot and his mother's house.

On the day of his arrest, defendant loitered at the park, had breakfast, did paperwork, and made phone calls. He had been doing so for almost a week. Defendant testified that it was "totally false" that he had been parking there for a month and had only been doing so for five days. Defendant denied that he ever saw the victims before and denied having asked them for a cigarette lighter. Defendant testified that he never whistled at, clapped at, or made lewd comments to the victims. According to defendant, the victims lied when they testified. He told the jury that his prior offenses were over 24 years old "and there's no way I'd do anything to reoffend in any way."

Defendant testified that he saw the victims that day at the park from a distance while he was sitting in his van. When defendant saw that they were heading toward him, he thought that he might know them and used his binoculars to look at them. Defendant testified that while he always parked in the same place, he had not seen the victims

6.

before. He also testified that he had noticed a man "stalking" him and taking pictures. Defendant noticed that the victims were texting "quite a bit." But his window was rolled up the entire time and he never made "whoo-whoo" sounds or whistled at the victims. He never told the victims that he thought they were cute.

Defendant also testified that he did not put cookies on the hood of his van to entice children but had thrown them out there because the cookies were stale. When asked about failing to report his change of address, defendant testified that he intended to report a new address but "didn't get [it] in time."

When cross-examined, defendant admitted that he had been in prison from 1996 until April 2018. Defendant denied making the comments attributed to him by the victims but admitted that, if made, such comments would be considered lewd. Defendant also agreed with the prosecutor that it was inappropriate for a 61-year-old man to call a 13-year-old girl cute, hot, or pretty, especially if the man was a stranger. Defendant testified, however, that he never said such things and denied having sexual interest in children anymore.

Defendant testified that he would leave the park around 3:30 or 4:00 p.m., before high school classes ended, because he did not want to be around the park when children were present due to his prior history. Although defendant was still at the park on the day of the offense, even though children were present, he was "fixing to leave." Defendant admitted that was still in his van, the engine was not running, and he had not backed from the parking space. He was still in his van but was not watching children.

Defendant saw the victims near his van at approximately 2:30 or 3:00 p.m. He used his binoculars to look at the victims when he saw them walking toward him. Defendant admitted that he used his binoculars to view the victims three times, although he admitted that he did not use the binoculars to identify the man he believed was stalking him in the park that day. When the prosecutor asked defendant whether he should be frequenting a park used by children with his binoculars, defendant denied that

7.

children frequented the park. Defendant testified that he had the binoculars for nature watching at the park earlier in the day.

Defendant denied being evicted from his most recent residence but acknowledged that he was no longer there. He admitted knowing he had to register his change of address but denied knowing that he had to register within five days of leaving his old residence. However, defendant then admitted that he knew he had register as transient within five days of becoming so.

Defendant admitted that he bought a white van even though he was worried about the cost of gas, and that he owned a white van when convicted of child molesting in 1996. Defendant also testified that he had previously admitted to being aroused by children and called himself a pervert in 2005. However, defendant testified that his interest in children stopped during his time in prison because being in prison convinced him never to do that again. Defendant claimed that the day of his arrest was the only day he had been around children.

Defendant testified that the victims never had skateboards, they must have acquired them after they left the area, and that their entire testimony was false. When asked why he thought the victims would lie, defendant testified that a woman was trying to get him arrested and used the victims to set him up.

## DISCUSSION

### I. The evidence was sufficient to support defendant's conviction of annoying or molesting a child.

#### A. Applicable Law and Standard of Review

Defendant challenges the sufficiency of the evidence supporting his conviction of annoying or molesting a child.

> "To assess the evidence's sufficiency, we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the

8.

verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict. [Citation.]

"The same standard governs in cases where the prosecution relies primarily on circumstantial evidence. [Citation.] We 'must accept logical inferences that the jury might have drawn from the circumstantial evidence. [Citation.]' [Citation.] 'Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.]' [Citation.] Where the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion the circumstances might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357–358, fourth, fifth, sixth, tenth & twelfth bracketed insertions in original.)

Subdivision (a)(1) of section 647.6 provides: "Every person who annoys or molests any child under 18 years of age shall be punished .…" Pursuant to subdivision (c)(2) of section 647.6, an offense under section 647.6, subdivision (a) is deemed a felony if the defendant has a prior conviction for one of the offenses enumerated in section 647.6, subdivision (c)(2), which includes a conviction for rape.

The California Supreme Court has instructed that "section 647.6, subdivision (a), does not require a touching [citation] but does require (1) conduct a ' "normal person would unhesitatingly be irritated by" ' [citation], and (2) conduct ' "motivated by an

9.

unnatural or abnormal sexual interest" ' in the victim [citation]." (*People v. Lopez* (1998) 19 Cal.4th 282, 289 (*Lopez*).)

"[T]he words 'annoy' and 'molest' in former section 647a (now section 647.6, subdivision (a)) are synonymous and generally refer to conduct designed to disturb, irritate, offend, injure, or at least tend to injure, another person." (*Lopez, supra,* 19 Cal.4th at p. 289.) "[T]o determine whether the defendant's conduct would unhesitatingly irritate or disturb a normal person, we employ an *objective* test not dependent on whether the child was in fact irritated or disturbed." (*Id*. at p. 290.) " '[I]n the cases decided under section 647.6, subdivision (a), the actor's mental state is disregarded in evaluating whether the element of objectively disturbing conduct has been met. In every reported case in which the courts have upheld convictions under section 647.6, the defendant's objective conduct would have unhesitatingly irritated or disturbed a reasonable person had it been directed at that person regardless of the defendant's intent.' " (*Id*. at p. 291.)

### B.    Analysis

Defendant argues that the trial evidence failed to establish that a normal person, without hesitation, would have been disturbed, irritated, offended, or injured by his conduct. Defendant has not challenged the two other elements of the crime, that is, whether the victims were under the age of 18 years and whether defendant's conduct was sexually motivated. Defendant similarly does not challenge whether he had a prior conviction for an offense enumerated in section 647.6, subdivision (c)(2).

Having reviewed the trial evidence in its entirety, we determine that defendant's conviction of violating section 647.6, subdivision (c)(2) is supported by substantial evidence such that a reasonable trier of fact could find defendant guilty beyond a reasonable doubt. (See *People v. Zamudio*, *supra*, 43 Cal.4th at p. 357.)

The evidence demonstrated that the victims were young girls, 13 and 15 years old. They were by themselves in the park being watched by defendant, who was a stranger to them and more than 50 years older than themselves. When H.J. innocuously bent over, showing her butt to defendant, defendant whistled and catcalled. While both victims provided a demonstration of the sound, we can only interpret the testimony by reference to the meaning of the word "catcall." According to Merriam-Webster, "catcall" is defined as "a loud, sexually suggestive call or comment directed at someone publicly (as on the street)." (Merriam-Webster Online Dict. <https://www.merriam-webster.com/dictionary/catcall> [as of Dec. 27, 2022].) Therefore, defendant's expression would be interpreted by a normal person as expressing sexual attraction. Combined with defendant's comments that the victims were cute, pretty, and hot, a normal person would objectively interpret defendant's conduct and comments as expressing sexual attraction for the victims. A normal person would unhesitatingly be irritated and disturbed by defendant's conduct, which expressed sexual attraction for the underage victims, especially given the 50-year age difference between defendant and the victims. Most people find such expressions of sexual attraction by strangers to be unwelcome and irritating. Given the additional fact that the victims did not know defendant, we believe that substantial evidence supports the jury's conclusion that a normal person, without hesitation, would have been disturbed, irritated, offended, or injured by defendant's conduct. (*Lopez*, *supra*, 19 Cal.4th at p. 289.)

Defendant relies upon our Supreme Court's decision in *People v. Carskaddon* (1957) 49 Cal.2d 423 to argue that his conduct was ambiguous, exhibiting no more than " 'friendly noncriminal activity,' " because defendant could have been expressing appreciation for the victims' skateboarding prowess. However, we find defendant's conduct in this case to be decidedly more disturbing than Carskaddon's conduct. In that case, a witness observed Carskaddon with two small children under a tree in the park. (*Id*. at p. 424.) The little boy left, and the little girl remained with Carskaddon. (*Id*. at

11.

p. 425.) The witness never saw defendant touch the girl. (*Ibid*.) Carskaddon bought the girl an ice-cream bar and they walked from the park toward a river. (*Ibid*.) A police officer contacted them, and Carskaddon advised that the girl was lost and he was taking her home. (*Ibid*.) The girl contradicted Carskaddon's explanation that he was taking her home and she stated that defendant was taking her to " 'the river to show her—' " (the officer's testimony was interrupted before completing the girl's statement to him). (*Ibid*.) "The officer did not see [Carskaddon] make any motions with his arms or any other part of his body toward the girl but only observed them 'walking side by side down the street.' " (*Ibid*.) The Supreme Court concluded, "there is no substantial evidence of anything more than friendly noncriminal activity on the part of [Carskaddon] toward the girl. Any mere suspicion that [Carskaddon] might have intended to annoy or molest the girl later would rest wholly in the realm of conjecture and would be insufficient to sustain a conviction of the offense with which he was charged. (*Id*. at pp. 426–427.)

As we have concluded, defendant's conduct included catcalls when H.J. bent over and exposed her butt and comments on the victims' appearances being "hot," "cute," and "pretty." While defendant's whistling and clapping could be construed as an expression of the victims' skateboarding skills, a normal person would not objectively view defendant's comments to be directed toward the victims' skills considering defendant's catcalls and comments on their appearance. We conclude that this is not a case where the evidence was insufficient to prove a violation of section 647.6 because the evidence showed nothing "more than friendly noncriminal activity on the part of defendant toward the girl." (*People v. Carskaddon*, *supra*, 49 Cal.2d at p. 426.)

We, therefore, conclude that substantial evidence supports defendant's conviction of annoying and molesting a child under the age of 18 years pursuant to section 647.6, subdivision (c)(2).

**II.    The trial court did not abuse its discretion in admitting evidence of defendant's prior sex crimes involving children under the age of 14 years pursuant to Evidence Code section 1108.**

### A.    Background

#### 1.    *Trial Court's In Limine Ruling*

The second amended information alleged that defendant had been convicted in Arkansas of rape, sexual abuse in the first degree, and sexual solicitation of a child in 1996.  Certified court records of the convictions provide that defendant was initially charged with rape (Ark. Code Ann. § 5-14-103(a)(3); charges 1 & 2),[5] sexual abuse in the first degree (former Ark. Code Ann. § 5-14-108(2)(3); charge 3),[6] sexual solicitation of a child (former Ark. Code Ann. § 5-14-108; charges 4 & 5),[7] and being a habitual offender (no statutory citation was referenced; charge 6).  Defendant pleaded guilty to and was convicted of one charge each of rape, sexual abuse in the first degree, and sexual solicitation.[8]

Defendant filed a motion in limine to exclude evidence of his 1996 sex crime convictions pursuant to Evidence Code sections 1101, subdivision (b), 1108, and 352.

---

[5]    Charge 1 of the Arkansas felony information alleged that defendant "penetrated the vagina of a six[-]year[-]old female."  Charge 2 of the information alleged that defendant "penetrated the vagina of a five[-]year[-]old female."

[6]    Former Arkansas Code Annotated section 5-14-108(**a**)(3) appears to have been the correct statute, as listed in the judgment and commitment order.  Charge 3 of the Arkansas felony information alleged that "defendant touched the vagina and buttocks of a six[-]year[-]old female."

[7]    Arkansas Code Annotated section 5-14-110 appears to be the correct statute for sexual solicitation of a child and is the statute reflected on the judgment and commitment order.  (See 1995 Arkansas Laws Act 550 (H.B. 1139).)  Charge 4 alleged that defendant propositioned an 11-year-old female to undress and allow him sexual contact in exchange for money, and charge 5 alleged the same crime as to a 12-year-old female.

[8]    According to the Arkansas "Prosecutor's Short Report of Circumstances" (a statement required by Ark. Code Ann. § 12-27-113(c)(1) & (2)), defendant pleaded guilty to raping a five-year-old female (alleged in charge 2), sexual abuse (alleged in charge 3), and solicitation of an 11-year-old female (alleged in charge 4).

The prosecutor moved in limine to admit the 1996 convictions pursuant to Evidence Code section 1108 and, by supplemental motion, pursuant to both Evidence Code sections 1108 and 1101, subdivision (b).

The prosecutor argued that the prior convictions should be admitted as evidence of defendant's propensity to commit the crime of annoying and molesting a child as well as to prove defendant's abnormal sexual interest in children, an element of that crime. (See §§ 1101, subd. (b), 1108.) The prosecutor also argued that because she intended to prove the convictions using only certified court records reflecting the name of the charges and that they involved children, but not testimonial evidence, any prejudice was outweighed by the probative value of the evidence. Defense counsel offered to stipulate that defendant had been convicted of felony offenses that required him to register as a sex offender. Defense counsel argued that the actual nature of the convictions should not be disclosed to the jury and objected to the prosecutor's use of records to prove the prior crimes, as opposed to witness testimony, arguing that the lack of witness testimony would violate defendant's right to confront his accusers.

The trial court recognized that it needed to analyze the words used describing the convictions to determine how they would be phrased to the jury. The trial court agreed that the convictions were relevant because they involved a type of sexual activity with minor children and that the jury should hear that the convictions involved sexual activities with minor children but indicated that the language used to describe the convictions should be sanitized because the current offense did not involve rape or sexual intercourse with children. The trial court ruled that defendant's prior convictions were relevant in that they involved minor children but that "[t]he nature of the charges, assuming there is that stipulation … need not be put in front of the jury." The court limited the description of the prior convictions:

> "THE COURT: So I don't want to get into he was charged with
> rape. I don't want to get into he was charged with sexual abuse in the first

degree. I don't want to get into sexual solicitation of the child because that's not what he is charged with in the current offense. [¶] … [¶] … I think it's relevant that all three charges involve minors, children. That's relevant. And that's something that you can bring before the jury.

"But to go beyond that—so my ruling is that you can get into issues that the prior—the priors involve activity with minor children. Okay? But you cannot get into the specifics of the prior convictions as to their nature. Because I think that would inflame the jury beyond what the charges are in this case."

The trial court approved language that defendant was convicted of three prior felony sex charges that required him to register as a sex offender involving children under the age of 15 years. Overruling defense counsel's objections, the court ruled that the prior convictions could be used as evidence of defendant's propensity to commit the crime charged in count 1.

Defense counsel filed a supplemental motion to preclude the prosecution from using defendant's prior convictions as propensity evidence pursuant to Evidence Code section 1108. The prosecutor moved for reconsideration of the trial court's order regarding the language to be used in admitting the evidence of defendant's prior convictions and requested that language describe the convictions as involving more than one child under the age of 14 years (as opposed to 15 years as previously ordered). The trial court heard the parties' supplemental motions on the first day of trial, May 17, 2021.

During argument, defense counsel expressed his view that the court was not permitting defendant's prior convictions to be admitted as evidence of his intent, but solely to establish the prior conviction enhancement alleged as to count 1 and to prove defendant was required to register as a sex offender, an element of count 2. The trial court granted the prosecutor's motion pursuant to Evidence Code sections 1101 and 1108 and reaffirmed that the convictions could be used as evidence of defendant's propensity to commit the charged offenses pursuant to Evidence Code section 1108. The trial court

15.

explained that it limited the description of the offenses to lessen the prejudicial effect pursuant to Evidence Code section 352.

### 2. *Trial Stipulation*

At the beginning of the prosecution's case, the jury heard the following stipulation: "In [c]ase [No.] CR 96-645[,] [ ] defendant was convicted of three felony sex offenses involving children under the age of 14 years old[,] which requires him to register as a sex offender." Following the reading of the stipulation, the trial court instructed, "[Y]ou are to accept this as evidence as true."[9]

### 3. *Additional Rulings During Trial*

The trial court revisited the subject of defendant's prior convictions and the scope of the prosecutor's cross-examination before defendant testified. The trial court again recognized that defendant's prior convictions were relevant to proving defendant had an abnormal interest in children, an element for the charge of annoying a child under the age of 18 years (count 1). However, the trial court ruled that the prosecutor could not use the word "rape" in describing the conviction, as the term was too prejudicial, and should state "simply that it was a sexual offense involving a child five-years-old and regarding some sexual conduct."

Prior to cross-examination of defendant, the prosecutor asked for further guidance on the use of defendant's prior convictions in light of defendant's testimony on direct examination. She wanted to ask defendant if he had a sexual interest in children. The trial court ruled that the prosecutor could not use the term "rape," to inquire as to the

---

[9]     The People argue that defendant forfeited any objection to the introduction of his prior convictions because defense counsel agreed to the wording of the stipulation and stated that he had no objection to it. However, the record is clear that defense counsel stipulated to the prior convictions for purposes of section 647.6's sentence enhancement and for purposes of the failure to register offense but objected to the prosecutor using the convictions for purposes of Evidence Code sections 1101 and 1108. Therefore, we do not agree that defendant forfeited this argument.

specific acts committed that resulted in defendant's convictions, nor reference that one of the prior victims was five years old, but could describe the conduct as child molestation.

During cross-examination, outside the presence of the jury, the prosecutor advised the trial court that she wished to cross-examine defendant concerning statements from his 2005 interview concerning the crimes involved in his 1996 convictions. She explained that defendant had admitted that he engaged his victims by being nice to them, talking with them, and making them feel comfortable. Defendant also admitted that he was aroused by close contact with the children, characterized himself as a "pervert," and stated that he had recognized his attraction to children when he was in his forties. The trial court agreed that the prosecutor could cross-examine defendant regarding his statements in the 2005 interview that confirmed he had a sexual interest in children but excluded any discussion of specific details of the 1996 convictions or any uncharged crimes defendant discussed in the interview because those facts were more prejudicial than probative.

### 4. Trial Court's Instructions to the Jury

The trial court instructed the jury that it could consider the stipulation that defendant was convicted of three felony sex offenses involving children under the age of 14 years that were not charged in this case only if it found the convictions were proved by a preponderance of evidence. If so, then the jury might, but was not required to, conclude that "Defendant was exposed [*sic*] or inclined to commit sexual offenses; and based on that decision, also conclude that [ ] Defendant was likely to commit as charged here." The court also instructed that the jury's conclusion that defendant committed the uncharged offenses was only one factor to be considered with the other evidence and insufficient by itself to prove defendant's guilt as "[t]he People must still prove each charge or allegation beyond a reasonable doubt."

17.

**B.      Applicable Law and Standard of Review**

In general, evidence of a defendant's conduct other than what is currently charged is not admissible to prove that the defendant has a criminal disposition or propensity. (Evid. Code, § 1101, subd. (a).)  Uncharged conduct evidence is admissible, however, when relevant to prove a fact other than the defendant's criminal disposition, such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  (Evid. Code, § 1101, subd. (b); *People v. Ewoldt* (1994) 7 Cal.4th 380, 393, superseded by statute on other grounds as stated in *People v. Britt* (2002) 104 Cal.App.4th 500, 505.)  "But Evidence Code section 1108, subdivision (a) provides an exception to this rule:  'In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by [Evidence Code] Section 1101, if the evidence is not inadmissible pursuant to [Evidence Code] Section 352.'  Evidence Code section 352, in turn, provides that '[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.'  'In short, if evidence satisfies [Evidence Code] section 1108, and is not excluded under [Evidence Code] section 352, admission of that evidence to prove propensity is permitted.'  [Citation.]  As a reviewing court, we accord deference to a trial court's determination that the probative value of a particular piece of evidence outweighs any danger of prejudice."  (*People v. Dworak* (2021) 11 Cal.5th 881, 899 (*Dworak*), third bracketed insertion in original.)

Our Supreme Court has explained that Evidence Code section 1108 "provides the trier of fact in a sex offense case the opportunity to learn of the defendant's possible disposition to commit sex crimes."  (*People v. Falsetta* (1999) 21 Cal.4th 903, 915 (*Falsetta*).)  Various factors are included in "the trial court's discretionary decision to admit propensity evidence under [Evidence Code] sections 352 and 1108."  (*Id*. at

18.

p. 919.)  "Rather than admit or exclude every sex offense a defendant commits, trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense."  (*Id*. at p. 917.)

We will not disturb a trial court's exercise of discretion under Evidence Code section 352 unless the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.  (*Dworak*, *supra*, 11 Cal.5th at pp. 899–900, citing *People v. Miles* (2020) 9 Cal.5th 513, 587, 587–588.)

### C.    Analysis

As described above, the trial court reviewed defendant's prior convictions with reference to the charges in this case.  The trial court then "engage[d] in a careful weighing process" to determine whether to admit the uncharged acts evidence.  (*Falsetta*, *supra*, 21 Cal.4th at p. 917.)  The trial court examined the nature of the prior convictions with reference to the charged offenses.  Both defendant's prior convictions and the charged offenses involved minor children.  Defendant's prior convictions showed defendant's propensity to commit sex offenses against children and evidenced defendant's abnormal or unnatural sexual interest in children, which was an element of the crime of annoying or molesting children in violation of section 647.6.  The evidence of defendant's prior sexual interest in children was highly relevant to the questions of whether defendant whistled and made sexual comments to the victims and was motivated by his sexual interest in children.  Since defendant's prior convictions were admitted for

19.

proving intent and propensity, it was unnecessary for the trial court to find that the uncharged acts shared distinctive features beyond defendant's abnormal sexual interest in children. (See *Dworak*, *supra*, 11 Cal.5th at p. 902 [enough that charged and uncharged offenses are sex offenses as defined in Evid. Code, § 1108]; see *People v. Ewoldt*, *supra*, 7 Cal.4th at pp. 402–403.)

The trial court did not err in evaluating the certainty that defendant committed the prior offenses since he was convicted of the crimes and stipulated to his convictions at trial. (See *Dworak*, *supra*, 11 Cal.5th at p. 900 [degree of certainty that defendant committed prior crime is high where convicted of crime].) Defendant acknowledges that the remoteness of his convictions is no deterrent to admission. (See *id*. at p. 901, citing *People v. Loy* (2011) 52 Cal.4th 46, 62 ["crimes committed 15 and 21 years before the charged offense were not so remote as to require exclusion where the defendant had been in prison for much of the intervening time"].)

As to the potential for undue prejudice, defendant argues that evidence of his prior convictions was " 'more inflammatory' " than testimony concerning the charged offense and "[t]his factor alone should have compelled exclusion of the prior acts evidence." We do not agree as the trial court excluded both the descriptive names of defendant's prior crimes and the specific details of the offenses. However, having found defendant's prior convictions relevant to the charges in this case, the court then analyzed the nature of the prior offenses and determined that the probative value of the convictions was based upon the fact that defendant committed sex offenses against children. Because the instant offense did not involve touching, the trial court concluded that the probative value of describing defendant's prior offenses as rape or sexual assault was outweighed by the prejudice engendered should the jury learn that defendant had sex with children five and six years of age. The trial court lessened any undue prejudice by limiting the description of defendant's prior convictions to "three felony sex offenses involving children under the age of 14 years old." (See *Falsetta*, *supra*, 21 Cal.4th at p. 917 [trial judge should

consider the availability of less prejudicial alternatives, "such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense"].)

This evidence that defendant had three prior felony sex offenses involving children under the age of 14 years was not inflammatory simply because it was strong evidence of defendant's motivation. "The prejudice which exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence." (*People v. Karis* (1988) 46 Cal.3d 612, 638.) Rather, " '[t]he "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues. In applying [Evidence Code] section 352, "prejudicial" is not synonymous with "damaging." ' " (*Ibid.*)

Defendant also argues that the jury here would have concluded that defendant had not been punished for his prior crimes and would want to punish him now. However, defendant ignores his own testimony that established he had been in prison between 1996 and 2018. Considering this testimony, the jury would not have concluded that defendant was not sufficiently punished for his prior crimes.

As defendant acknowledges, the crime of annoying or molesting a child under 18 years of age (§ 647.6) requires the prosecution to prove that (1) the defendant engaged in conduct directed at a child; (2) a normal person, without hesitation, would have been disturbed, irritated, offended, or injured by the defendant's conduct; (3) the defendant's conduct was motivated by an unnatural or abnormal sexual interest in the child; and (4) the child was under the age of 18 years at the time of the conduct. (CALCRIM No. 1122; see *Lopez*, *supra*, 19 Cal.4th at p. 289.) Defendant argues that because the standard for determining whether defendant's conduct was annoying is objective, the trial

21.

court erred in determining that defendant's prior sex offenses involving children were relevant to proving this crime. We cannot agree.

In describing the purpose of Evidence Code section 1108, our Supreme Court referred to a letter by the author of the legislation, contained in the Assembly Journal, which states, "[Evidence Code] section 1108 ' "permits courts to admit such evidence on a common sense basis—without a precondition of finding a 'non-character' purpose for which it is relevant—and permits rational assessment by juries of evidence so admitted. This includes consideration of the other sexual offenses as evidence of the defendant's disposition to commit such crimes, and for its bearing on the probability or improbability that the defendant has been falsely or mistakenly accused of such an offense." ' " (*Falsetta*, *supra*, 21 Cal.4th at p. 912, quoting Letter by Assemblyman Rogan regarding Assem. Bill No. 882 (1995–1996 Reg. Sess.) published in 2 Assem. J. (1995–1996 Reg. Sess.) p. 3278, reprinted at 29B pt. 3 West's Ann. Evid. Code (1999 pocket supp.) foll. § 1108, at pp. 40–41.)

As such, the trial court admitted the evidence of defendant's conviction of three felony sex offenses involving children under the age of 14 years as evidence that defendant committed the crime of annoying or molesting children in this case. The evidence was relevant because it tended to prove that defendant engaged in the conduct described by the victims (the first element) and that defendant had an unnatural or abnormal sexual interest in the victims, which motivated his conduct (the third element). The relevance of defendant's prior convictions for proving these elements is not affected by the second element, which requires the jury to objectively view defendant's conduct without consideration of defendant's intent or the effect on the victims. Defendant has failed to cite any case authority for the sweeping argument that application of an objective standard when determining whether defendant's conduct would have annoyed a normal person requires the trial court to conclude that his prior convictions are not relevant pursuant to Evidence Code section 1108 or more prejudicial than probative

pursuant to Evidence Code section 352. Indeed, if defendant's argument is accepted, then a defendant's prior sex offenses could never be admitted as evidence of a defendant's disposition to commit sex crimes when charged with a violation of section 647.6. We have found no case supporting defendant's argument or excluding prior sex offenses because the jury determines whether a defendant's conduct was annoying by using an objective standard.

We conclude that the trial court did not abuse its discretion by admitting the uncharged acts evidence at defendant's trial.

### III. The prosecutor's closing argument did not violate the United States Constitution's guarantee of due process.

#### A. Background

The prosecutor commenced her closing argument by stating, "On February 19, 2019, [ ] Defendant, a convicted child molester for crimes involving children under the age of 14 years old, was at [the] Park here in Porterville preying on children again." After reviewing the elements of the offense generally, the prosecutor told the jury that the evidence showed that defendant catcalled and whistled at the victims when H.J. bent over with her butt facing defendant. Defendant also told the victims that they were hot, cute, and pretty. The prosecutor argued that this conduct would have disturbed, irritated, or offended a normal person. The prosecutor noted that defendant was a 61-year-old man who "should not be doing this to children that are strangers. On top of that, [ ] Defendant is a convicted child molester for crimes involving children under the age of 14 [years]. So[,] he should absolutely not be doing this at all to children." The prosecutor further argued:

> "There is no requirement that the child actually be irritated or disturbed, but, of course, we had that here. We heard testimony from [the victims] that both of them felt uncomfortable. They were scared and afraid of [ ] Defendant when he was doing this towards them; so much that they called the police because they were uncomfortable with what was

23.

happening. And it happened on multiple occasions, this repeated conduct, that finally led up to [C.H.] picking up the phone and dialing 9-1-1 because she knew this was wrong.

"I think when [H.J.] testified and she was asked about why she was scared, she said, this is an old man and we were just kids and he's saying these things to us and doing these things to us that is not right, especially considering that [ ] Defendant had these prior convictions history.

"So[,] you can consider how [the victims] felt. They felt scared and uncomfortable. They called the police. And consider [ ] Defendant's age. He was a 61-year-old adult man. [C.H.] was only 13 years old and [H.J.] had just turned 15 [years old] the day before. So[,] for some of the acts that [ ] Defendant did, she was actually 14 years old. Also consider that [ ] Defendant was a complete stranger. Both of them said they didn't know him. [ ] Defendant said himself he did not know them either.

"I talked about how there's repeated conduct. And we know about [ ] Defendant's prior conviction history. All of that is what you can consider when you consider this charge."

The prosecutor argued that defendant characterized the comments described by the victims as "lewd." In addition, the prosecutor argued that defendant's three prior felony sex offenses involving children permitted the jury to "conclude based on those that [ ] Defendant was exposed or inclined to commit sex offenses and that he likely committed the charged crime. You can use his priors to make that determination. And that is in the jury instruction for you and the law that was read to you by the Judge."

Defense counsel did not object during the prosecutor's closing argument. Defendant claims that the prosecutor engaged in misconduct by arguing that defendant's prior sex offenses could be used by the jury to determine that he likely committed the crime and by urging the jury to consider the victims' actual reactions to defendant's conduct in assessing whether that conduct would have irritated or disturbed a normal person. We find no misconduct.

## B. Applicable Law and Standard of Review

The general rules applying to claims of prosecutorial misconduct are as follows:

> "Under the federal Constitution, to be reversible, a prosecutor's improper comments must ' "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process." ' [Citations.] ' "But conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves ' "the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury." ' " ' " (*People v. Cunningham* (2001) 25 Cal.4th 926, 1000 (*Cunningham*), second bracketed insertion added.)

When the claim of prosecutorial misconduct "is based upon 'comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion.' " (*Cunningham*, *supra*, 25 Cal.4th at p. 1001.)

"Although counsel have 'broad discretion in discussing the legal and factual merits of a case [citation], it is improper to misstate the law.' " (*People v. Mendoza* (2007) 42 Cal.4th 686, 702 [prosecutor improperly suggested that the jurors could "subjectively define the reasonable person standard"].) The prosecutor need not knowingly or intentionally commit misconduct and a "more apt description of the transgression is prosecutorial error." (*People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1.)

"To preserve a claim of prosecutorial misconduct for appeal, a defendant must object and seek an admonition if an objection and admonition would have cured the harm." (*People v. Kennedy* (2005) 36 Cal.4th 595, 618, disapproved on other grounds by *People v. Williams* (2010) 49 Cal.4th 405, 459.) The objection must be made on the same ground upon which the defendant now assigns error. (*People v. Jones* (2003) 29 Cal.4th 1229, 1262.) If a defendant fails to object, the misconduct claim is preserved for review only if an admonition would not have cured the harm. (*People v. Cook* (2006) 39 Cal.4th 566, 606.)

### C.     Analysis

#### 1.     *Forfeiture*

The People argue that defendant forfeited this issue by failing to make a timely objection.  We agree.  "[T]he initial question to be decided in all cases in which a defendant complains of prosecutorial misconduct for the first time on appeal is whether a timely objection and admonition would have cured the harm.  If it would, the contention must be rejected .…"  (*People v. Green* (1980) 27 Cal.3d 1, 34, abrogated on another ground by *People v. Martinez* (1999) 20 Cal.4th 225, 240–241, overruled on another ground by *People v. Fontenot* (2019) 8 Cal.5th 57, 70.)  "The reason for this rule, of course, is that 'the trial court should be given an opportunity to correct the abuse and thus, if possible, prevent by suitable instructions the harmful effect upon the minds of the jury.' "  (*Green*, at p. 27.)  The failure to timely object and request an admonition will be excused if doing either would have been futile, or if an admonition would not have cured the harm.  (*People v. Hill*, *supra*, 17 Cal.4th at p. 820.)  Neither exception is applicable in this case.  Had defendant objected, the trial court could have admonished the jury to disregard the prosecutor's comments if they were improper.

#### 2.     *Ineffective Assistance of Counsel*

Notwithstanding defendant's forfeiture of his prosecutorial misconduct claim, we may still grant relief if trial counsel's failure to preserve that claim constituted ineffective assistance.  (See *People v. Espiritu* (2011) 199 Cal.App.4th 718, 725.)  "In order to establish a claim for ineffective assistance of counsel, a defendant must show that his or her counsel's performance was deficient and that the defendant suffered prejudice as a result of such deficient performance."  (*People v. Mickel* (2016) 2 Cal.5th 181, 198, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687–692.)  "To demonstrate deficient performance, [a] defendant bears the burden of showing that counsel's performance ' " ' "fell below an objective standard of reasonableness … under prevailing professional norms." ' " ' [Citation.]  To demonstrate prejudice, [a] defendant bears the

burden of showing a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different." (*Mickel*, at p. 198.)

Defendant contends that the prosecutor erred in arguing that defendant's prior felony sex convictions could be used to determine that he likely committed this crime. Contrary to defendant's argument, prior offenses admitted pursuant to Evidence Code section 1108 can be used by the jury "to find that defendant had a propensity to commit such crimes, which in turn may show that he committed the charged offenses." (*Falsetta*, *supra*, 21 Cal.4th at p. 923.) Using a modified version of CALCRIM No. 1191A, the trial court instructed the jury that it could consider defendant's prior convictions of three felony sex offenses involving children under the age of 14 years to conclude that "Defendant was exposed [*sic*][10] or inclined to commit sexual offenses; and based on that decision, also conclude that [ ] Defendant was likely to commit as charged here." The prosecutor's argument was consistent with the trial court's instruction and was not error. Defense counsel was not ineffective for failing to object to the prosecutor's argument.

During argument to the jury, the prosecutor noted that a violation of section 647.6 required the jury to find that "a normal person … would have been disturbed, irritated, or offended by [ ] Defendant's conduct." The prosecutor described the circumstances of defendant's conduct, that he had repeatedly called the victims cute, hot, and pretty and this conduct also had occurred on multiple days. The prosecutor argued that defendant was 61-year-old man "doing this to children that are strangers." The prosecutor argued that the jury need not find that the child was actually irritated or disturbed but then described the circumstances that the victims found frightening, that they were "just kids" while defendant was an old man and a stranger. In evaluating defendant's conduct, the prosecutor asked the jury to consider the victims' reactions to defendant's conduct, their

---

**10**     CALCRIM No. 1191A provides in part:  "[Y]ou may, but are not required to, conclude from that evidence that the defendant was *disposed* or inclined to commit sexual offenses." (Italics added.)

27.

young ages, defendant's age, the repeated nature of the conduct, and that defendant was a stranger to them. The prosecutor also pointed out that defendant himself had characterized the comments attributed to him as "lewd," which the prosecutor defined as crude and offensive in a sexual way.

The prosecutor's argument did not misstate the law. The prosecutor recited the "normal person" standard, then argued that the victims' reactions supported a finding that the standard was met. The prosecutor also argued that in determining whether defendant's conduct met that standard, the jury should consider all the relevant circumstances. The prosecutor did not suggest that the victims' reactions was the only evidence the jury needed to satisfy the requirement of "conduct a ' "normal person would unhesitatingly be irritated by." ' " (*Lopez*, *supra*, 19 Cal.4th at p. 289.) Additionally, the irrelevance of the victims' states of mind does not mean that their responses to defendant's conduct were irrelevant. Their responses provided the context in which defendant's actions were to be evaluated to determine whether such actions were objectively annoying. The victims' reactions to defendant's conduct had some relevance in assisting the jury in evaluating whether defendant's conduct, in context, was objectively annoying. Because the prosecutor did not argue that the victims' subjective opinions regarding defendant's conduct was sufficient itself to prove that defendant's conduct would unhesitatingly irritate or disturb a normal person, we find no " 'reasonable likelihood' " that the jury misconstrued the prosecutor's challenged remarks. (See *Cunningham*, *supra*, 25 Cal.4th at p. 1001.)

Even assuming the prosecutor's argument did improperly suggest that the victims' subjective reactions were sufficient to prove that defendant engaged in "conduct a ' "normal person would unhesitatingly be irritated by" ' " (*Lopez*, *supra*, 19 Cal.4th at p. 289), the misconduct was not prejudicial. The trial court's instructions pursuant to CALCRIM No. 1122 told the jury that one of the required elements of section 647.6 was that "a normal person without hesitation would have been disturbed, irritated, offended or

injured by [ ] Defendant's conduct." The trial court also instructed the jury, pursuant to CALCRIM No. 200, to "follow the law" as explained by the trial court and that if "the attorney's [*sic*] comments on the law conflict with [the] instructions," the jury must follow the instructions. We presume the jury understood and followed the court's instructions (see *People v. Gray* (2005) 37 Cal.4th 168, 231), and we note that "arguments of counsel 'generally carry less weight with a jury than do instructions from the court' " (*People v. Mendoza*, *supra*, 42 Cal.4th at p. 703).

On this record, there was no prejudicial prosecutorial misconduct and, consequently, we reject defendant's claim of ineffective assistance of counsel for failing to object.

## IV. Evidence Code section 1108 does not violate the United States Constitution's guarantee of due process or equal protection.

Our Supreme Court has concluded the use of propensity evidence under Evidence Code section 1108 does not violate due process. (*Falsetta*, *supra*, 21 Cal.4th at p. 917.) Defendant asks that we re-examine *Falsetta*. However, this court is bound by Supreme Court precedent. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) As the California Supreme Court has repeatedly rejected due process challenges to section 1108 (*Dworak*, *supra*, 11 Cal.5th at p. 900; *People v. Rhoades* (2019) 8 Cal.5th 393, 415; *Falsetta*, at p. 907), so do we. (See *Auto Equity Sales, Inc.*, at p. 455).

## V. Defendant's sentence of 50 years to life does not violate the United States Constitution's prohibition of cruel and unusual punishment.

Defendant argues that his sentence of 50 years to life for "relatively minor" offenses of "annoying a child by clapping and whistling, and saying they were 'cute,' without any touching, indeed without leaving his van, and a technical violation of his duty to register" is cruel and unusual under the state and federal Constitutions because it exceeds constitutional boundaries of appropriate punishment. We disagree.

### A.    Background

Defendant was convicted in Arkansas of rape, sexual abuse in the first degree, and sexual solicitation of a child in 1996.  Certified court records of the convictions provide that defendant was initially charged with rape, sexual abuse in the first degree, sexual solicitation of a child, and being a habitual offender, but pleaded guilty to one charge each of rape, sexual abuse in the first degree, and sexual solicitation.  Charge 1 of the Arkansas felony information alleged that defendant "penetrated the vagina of a six[-]year[-]old female."  Charge 2 of the information alleged that defendant "penetrated the vagina of a five[-]year[-]old female."  Charge 3 of the information alleged that defendant touched the vagina and buttocks of a six-year-old female.  Charge 4 alleged that defendant propositioned an 11-year-old female to undress and allow him sexual contact in exchange for money, and charge 5 alleged the same crime as to a 12-year-old female.

Defendant had been convicted of drug-related felonies in 1988, 1990, and 1991, and the latter two convictions resulted in a six-year prison sentence.  Defendant was convicted of second degree battery and false imprisonment in 1995 and endangering the welfare of a minor in 1996.  Defendant was released from prison in 2018, registered as a sex offender in April 2018, and committed the instant offense in February 2019 after having been evicted from his residence January 1, 2019, and failing to update his sex offender registration.  According to defendant's trial testimony, he had only been frequenting the park for a week, although the victims testified that they had seen defendant at the park for several weeks before the offense.

According to the probation officer's report describing the 1996 convictions, a five-year-old victim told police that defendant " 'put his winky in her PP' " on three different days.  A six-year-old victim told police that defendant, on at least three occasions, licked her " 'PP' " after taking off her pants and then gave her a quarter.  Another six-year-old victim told police that defendant put his hand in her underwear on one occasion and put

30.

"his thing in her behind" another time. In addition, defendant propositioned two other girls, 11 and 12 years old, and offered to pay them to strip and let him touch them.

The probation report also noted that defendant's scores on the Static-99R, a risk assessment tool for sex offenders, placed him as a level IVa, indicating the risk of defendant reoffending was above average. Regarding the crime, the probation report noted that defendant committed the offense of annoying and molesting a child using a pair of binoculars he brought to the park to observe the victims and having cookies on the hood of his van to appeal to children, which showed planning and criminal sophistication. The report also noted that defendant did not express remorse for his actions, repeating his claim during his trial testimony that the victims lied and he was "set up and framed."

In denying defendant's motion to strike his prior convictions, the trial court recognized that the offenses involved extremely vulnerable children under the age of 10 years and substantial sexual conduct. Defendant had been out of prison less than one year when he reoffended. Although defendant was homeless and had limited choices, the trial court noted that defendant "chose a place, a public park, where clearly children were always generally present," "clearly a place that he was not supposed to be at based on his convictions." Although defendant was aware of the requirements for registering his sex offender status, he "flat out ignored [those] requirements." The trial court also commented on the potential for other victims given defendant's attitude that he could "basically ignore[e] the law."

### B. Applicable Law and Standard of Review

The Eighth Amendment of the United States Constitution prohibits cruel and unusual punishment and applies to the states through the Fourteenth Amendment. (See *Robinson v. California* (1962) 370 U.S. 660, 666–667.) The United States Supreme Court has adopted " 'a narrow proportionality principle' " for assessing Eighth Amendment challenges to noncapital sentences. (*Ewing v. California* (2003) 538 U.S.

31.

11, 20 (*Ewing*).)  This principle prohibits only " ' "extreme sentences that are 'grossly disproportionate' to the crime" ' " (*In re Coley* (2012) 55 Cal.4th 524, 542 (*Coley*)) and calls for courts to consider the current offense and the defendant's criminal history (*Ewing*, at p. 29).

In applying this principle of proportionality, a court begins by comparing the gravity of the offense, which, in the case of a Three Strikes sentence, includes both the defendant's current crime and history of recidivism, with the severity of the sentence. (*Coley*, *supra*, 55 Cal.4th at p. 542.)  If the comparison leads the reviewing court to draw an inference of disproportionately, it must then compare the sentence to sentences imposed on similar defendants in the same jurisdiction and to the sentences imposed on similar defendants in other jurisdictions.  (*Ibid.*)  If this inter-and intra-jurisdictional comparison validates the court's initial inference of disproportionality, the sentence is cruel and unusual.  (*Ibid.*)  Gross disproportionality is found only in " 'exceedingly rare' and 'extreme' case[s]."  (*Lockyer v. Andrade* (2003) 538 U.S. 63, 73 (*Lockyer*).)

To prevail on a cruel or unusual punishment challenge to a sentence under California Constitution, article I, section 17, a defendant must overcome a considerable burden.  (*People v. Wingo* (1975) 14 Cal.3d 169, 174.)  That is because the matter of defining crimes and determining punishment is "uniquely in the domain of the Legislature," and "the validity of enactments will not be questioned 'unless their unconstitutionality clearly, positively, and unmistakably appears.' " (*Ibid.*)  A sentence may violate California Constitution, article I, section 6 if it is "so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity."  (*In re Lynch* (1972) 8 Cal.3d 410, 424, superseded by statute on other grounds as stated in *People v. Caddick* (1984) 160 Cal.App.3d 46, 51–52.)  Among the so-called "techniques" developed by the courts to make this determination is an examination of "the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society."  (*In re Lynch*, at pp. 425–427.)  Courts

consider the offense in the abstract, as well as the specific facts of the crime in question, including the defendant's motive, the scope of the defendant's involvement in the crime, the way the crime was committed, and the consequences of the defendant's acts. (*People v. Baker* (2018) 20 Cal.App.5th 711, 724.) In addition, courts examine the defendant's personal characteristics, including age, prior criminality, and mental capabilities to determine whether the punishment is grossly disproportionate to the defendant's individual culpability. (*Ibid.*)

### C.     Analysis

First, we note that defendant never raised this issue in the court below and has, therefore, forfeited the right to raise it on appeal. (*People v. Kelley* (1997) 52 Cal.App.4th 568, 583.) However, we also reject the argument on its merits. The Eighth Amendment prohibits sentences that are grossly disproportionate to the crime, and we are not convinced this is such a case.

In *Coley*, our Supreme Court noted four appellate courts had already addressed the same Eighth Amendment issue in the context of a sentence of 25 years to life for a registered sex offender violation and reached opposite conclusions. Two courts—*People v. Carmony* (2005) 127 Cal.App.4th 1066 (*Carmony*) and *Gonzalez v. Duncan* (9th Cir. 2008) 551 F.3d 875—concluded a sentence of 25 years to life violated the Eighth Amendment where the registration violation was a passive, nonviolent, and regulatory violation, where the defendant did not evade law enforcement, and where law enforcement knew all along of the defendant's whereabouts because he had regularly registered and still lived at the same address. (*Coley, supra,* 55 Cal.4th at pp. 544–550.)

In contrast, two courts—*People v. Nichols* (2009) 176 Cal.App.4th 428 and *Crosby v. Schwartz* (9th Cir. 2012) 678 F.3d 784—held a sentence of 25 years to life did not violate the Eighth Amendment when the registration violation was not merely technical and resulted in law enforcement not knowing the defendant's whereabouts,

33.

thereby frustrating the registration requirement's purpose. (*Coley*, *supra*, 55 Cal.4th at pp. 550–551.) Rather than choose one line of authority over the other, our Supreme Court in *Coley* held the case before it was governed by the latter line and found no Eighth Amendment violation. (*Coley*, at pp. 551–552, 561–562.) We find that *Coley* supports the conclusion that defendant's sentence for failing to register as transient within five days of being evicted from his residence does not violate the Eighth Amendment.

Defendant describes the willful failure to register as a sex offender as a regulatory offense that may be committed merely by forgetting to register as required, citing *Carmony*, *supra*, 127 Cal.App.4th at page 1078, and further argues that "*Carmony* was a case largely indistinguishable from this one." We cannot agree with this characterization. Defendant failed to update his registration after having been evicted almost two months before. Although he previously registered at his mother's address, defendant chose to park his van in front of a store parking lot at night and at a park frequented by children during the day. While defendant's whereabouts were unknown to the police, defendant also engaged in pattern of conduct whereby he frequented a park where children played, used binoculars to view the children, and displayed cookies on his van in a possible attempt to lure children. Defendant's failure to update his sex offender registration is particularly disturbing given his conduct during the same time period.

We also cannot agree that defendant's conviction for annoying or molesting a child was "relatively minor" and involved only "annoying a child by clapping and whistling, and saying they were 'cute.'" Our Supreme Court has described " '[t]he primary purpose of [section 647a] [as] the "protection of children from interference by sexual offenders, and the apprehension, segregation and punishment of the latter." ' " (*In re Gladys R.* (1970) 1 Cal.3d 855, 868, second bracketed insertion added.) Furthermore, defendant's "whistling" was a catcall designed to express sexual attraction, and he made the sound and clapped when H.J. bent over and exposed her butt to pick up her skateboard. Defendant told the victims he thought they were "hot," another expression of

34.

sexual attraction, and he did so from a van that contained binoculars defendant used to view the victims, had cookies stacked on the hood, and a bed inside. While defendant never touched the victims, the trial court understandingly concluded that this was likely because their age allowed them to recognize the danger and contact the police.

We find the facts here very distinguishable from *Carmony*, where Carmony had registered a month before his birthday and, while failing to update his sex offender registration within five days of his birthday, Carmony was residing at the same address and his current offense was a nonviolent regulatory offense that posed no direct or immediate danger to society. (*Carmony*, *supra*, 127 Cal.App.4th at pp. 1078–1082.) Unlike *Carmony*, defendant's registration violation was discovered after his arrest for annoying and molesting a child. We also note that Carmony had recently married, maintained a residence, participated in Alcoholics Anonymous, sought job training and placement, and was employed. (*Id*. at p. 1073.) Defendant was homeless, unemployed, and reoffended within a year of his release from prison.

The United States Supreme Court has held that lengthy and even life sentences for nonviolent crimes do not constitute cruel and unusual punishment. (See, e.g., *Harmelin v. Michigan* (1991) 501 U.S. 957, 966–995 [life without parole found not to be disproportionate for possession of a large quantity of drugs]; *Rummel v. Estelle* (1980) 445 U.S. 263, 272, 285 [life sentence upheld for a nonviolent recidivist].) In *Ewing*, the defendant received a Three Strikes sentence of 25 years to life on a grand theft conviction based on two prior serious or violent felony convictions. (*Ewing*, *supra*, 538 U.S. at p. 28.) The United States Supreme Court held that the sentence was not cruel and unusual considering the defendant's most recent felony conviction, his history, and the state's interest in punishing recidivists. (*Id*. at pp. 29–30.) Though *Ewing* acknowledged the defendant's sentence was lengthy, it deferred to California's "public-safety interest in incapacitating and deterring recidivist felons." (*Id*. at p. 29.) In *Lockyer*, the defendant was previously convicted of three counts of residential burglary, and the conviction that

triggered Three Strikes applicability was petty theft. (*Lockyer*, *supra*, 538 U.S. at pp. 66, 68.) The Supreme Court held that two consecutive terms of 25 years to life was not one of the "extraordinary case[s]" for which the "gross disproportionality principle" reserves a constitutional violation. (*Id*. at p. 77.)

Here, defendant's sentence—which is admittedly lengthy but nonetheless comparable to the sentence in *Lockyer*—was not cruel and unusual considering the nature of his current felony offenses, his substantial criminal record that includes multiple prior felony convictions, including the three felony convictions for sexually abusing children, and his seeming inability to correct his criminal recidivism as demonstrated by these offenses occurring less than a year after his release from prison.

Considering the nature of defendant's current offenses and his long term and felonious criminal history, we conclude his sentence was not impermissibly disproportionate. Accordingly, defendant's sentence falls short of meeting the threshold for cruel and unusual punishment under the Eighth Amendment.

Turning to California law, we acknowledge that defendant engaged in conduct that was grossly inappropriate and that plainly violated the statute at issue, but he did not touch either victim or harm them physically. However, defendant's actions, viewed in context, were much more serious. Defendant, having been convicted of three prior sex offenses against very young children, committed yet another sexually themed offense against minor girls under circumstances that strongly suggest defendant intended more than touching. Defendant's criminal history and his repeated misdeeds demonstrate that he is a serious danger to society. Given the nature of defendant's current offense and his criminal history, we similarly conclude the sentence imposed was not so disproportionate that it shocks the conscience and offends fundamental notions of human dignity. (See *In re Lynch*, *supra*, 8 Cal.3d at p. 424.)

**VI.** **The trial court did not violate defendant's rights to due process and equal protection under the state and federal Constitutions by assessing fines and assessments without first determining defendant's ability to pay.**

### A. Background

On July 15, 2021, the trial court ordered defendant to pay a $3,000 restitution fine (former § 1202.4, subd. (b)), a $3,000 suspended parole revocation restitution fine (§ 1202.45), a $300 habitual sex offender fine (§ 290.3), $60 in criminal conviction assessments (Gov. Code, § 70373), and $80 in court operations assessments (§ 1465.8). With reference to the restitution fines, the trial court stated:

> "You are ordered to pay a restitution fine in the amount—at his age and his ability to earn is nonexistent. I am going to reduce that amount to $3,000.00. He will be entitled to work in prison for the term he is serving, so at least he'll be able to pay some of that. And I am reducing the amount to $3,000.00 pursuant to Section 120[2].4 of the Penal Code."[11]

Defendant did not dispute the trial court's assessment of his ability to pay and never objected to any of the fines or assessments. During trial testimony, defendant testified that he owned a van and received a small inheritance from his father. According to the probation report, defendant was incarcerated between 1996 and 2018 and received $200 a month in food stamps for six months preceding his arrest. Defendant paid $28 a month for auto insurance but did not have any other financial obligations.

### B. Applicable Law and Analysis

Defendant argues that the trial court violated his right to due process by imposing fines and assessments without determining whether he had the ability to pay them pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157. Although he did not object, defendant disputes that he forfeited the claim and, alternatively, argues that his trial counsel rendered ineffective assistance by failing to object. The People maintain that

---

[11] Defendant incorrectly asserts that the trial court "did not determine on the record whether [he] had the ability to pay the fine; the issue was never raised."

forfeiture bars defendant's claim and defendant has failed to demonstrate his trial counsel was ineffective.

As explained below, we reject defendant's arguments against application of the forfeiture doctrine and that his counsel was ineffective.

### 1. Forfeiture

Defendant failed to object to imposition of the challenged fines and assessments or request an ability to pay hearing upon any grounds, including the Eighth Amendment. The failure to object in the trial court generally forfeits a claim on appeal, and this principle is applicable to constitutional claims. (*People v. McCullough* (2013) 56 Cal.4th 589, 593; *In re Sheena K.* (2007) 40 Cal.4th 875, 880–881; *People v. Torres* (2019) 39 Cal.App.5th 849, 860 & fn. 4 [excessive fines claim forfeited in absence of timely objection]; see also *People v. Baker*, *supra*, 20 Cal.App.5th at p. 720 [Eighth Amendment claim forfeited for failure to raise it below].) Defendant argues that we may consider a pure question of law on undisputed facts. But " 'discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue.' " (*In re Sheena K.*, at p. 888, fn. 7.)

Failure to object to the restitution and habitual sex offender fines where statutory authority to do so exists also forfeits any *Dueñas* claim. (*People v. Aviles* (2019) 39 Cal.App.5th 1055, 1073.) As to the restitution fines, former section 1202.4, subdivision (d) required the trial court to consider defendant's ability to pay and, even if the record supported defendant's argument that the trial court did not address it, "defendant could have objected at the time if he believed inadequate consideration was being given to this factor." (*People v. Nelson* (2011) 51 Cal.4th 198, 227 [defendant forfeited claim that trial court erred in failing to consider ability to pay restitution fine by failing to object at sentencing].) Similarly, the habitual sex offender fine is mandatory "unless the court determines that the defendant does not have the ability to pay the fine."

38.

(§ 290.3, subd. (a); see *People v. McMahan* (1992) 3 Cal.App.4th 740, 749; *People v. Burnett* (2004) 116 Cal.App.4th 257, 261.)  Section 290.3 does not require the trial court to determine defendant's ability to pay prior to imposition of sentence, and the defendant must timely raise the issue of inability to pay to preserve this issue for appeal. (*McMahan*, at p. 749; see also *People v. Acosta* (2018) 28 Cal.App.5th 701, 705 [by failing to object to § 290.3 sex offender fines at sentencing or to assert he lacked the ability to pay them, the defendant waived claim that trial court improperly imposed them].)  A defendant has the burden both to raise inability to pay fines and fees, and to "present evidence of his or her inability to pay the amounts contemplated by the trial court."  (*People v. Castellano* (2019) 33 Cal.App.5th 485, 490.)

Thus, by failing to either object to the imposition of the restitution and habitual sex offender fines or seek an ability to pay hearing prior to their imposition, defendant has forfeited his challenge on appeal.  (See *McMahan*, at p. 749; *People v. Trujillo* (2015) 60 Cal.4th 850, 858 [the defendant forfeited challenge to fees under § 1203.1b by failing to object below and not asserting an inability to pay]; *People v. Aguilar* (2015) 60 Cal.4th 862, 864 [the defendant forfeited appellate challenge regarding probation-related costs & fees paid to appointed counsel under §§ 1203.1b, 987.8].)

Although defendant did not have a statutory right to object to the court operations and criminal conviction assessments, the parties and the trial court had ample notice of the *Dueñas* decision, which was decided more than two years prior to his sentencing. Defendant failed to object.  His claim has been forfeited.

## 2.  *Ineffective Assistance of Counsel*

As noted above, a claim for ineffective assistance of counsel requires defendant to show both that his counsel's performance was deficient and he suffered prejudice as a result.  (*People v. Mickel*, *supra*, 2 Cal.5th at p. 198.)  "[C]ertain practical constraints make it more difficult to address ineffective assistance claims on direct appeal rather than

in the context of a habeas corpus proceeding." (*Ibid*.) "The record on appeal may not explain why counsel chose to act as he or she did. Under those circumstances, a reviewing court has no basis on which to determine whether counsel had a legitimate reason for making a particular decision, or whether counsel's actions or failure to take certain actions were objectively unreasonable." (*Ibid.*) "Moreover, we begin with the presumption that counsel's actions fall within the broad range of reasonableness, and afford 'great deference to counsel's tactical decisions.' [Citation.] Accordingly, [the California Supreme Court] ha[s] characterized defendant's burden as 'difficult to carry on direct appeal,' as a reviewing court will reverse a conviction based on ineffective assistance of counsel on direct appeal only if there is affirmative evidence that counsel had ' " 'no rational tactical purpose' " ' for an action or omission." (*Ibid.*) If the record fails to disclose why trial counsel acted or failed to act in the manner challenged, the ineffective assistance of counsel claim must be rejected unless counsel was asked for, and failed to provide, an explanation or there could be no plausible explanation. (*People v. Pope* (1979) 23 Cal.3d 412, 426, overruled on another ground in *People v. Berryman* (1993) 6 Cal.4th 1048, 1081, fn. 10.)

The record before us does not reveal why defense counsel did not object to the fines and assessments. There could have been legitimate reasons why defense counsel may have chosen not to object, perhaps concluding that defendant would have had the ability to pay them during his lengthy incarceration and the possibility of employment in prison. Given defendant's testimony that he received an inheritance from his father, defense counsel may have been aware of facts demonstrating that defendant had an ability to pay. The record is silent on the matter, and defendant has failed to show counsel was ineffective in failing to object. (See *People v. Acosta*, *supra*, 28 Cal.App.5th at pp. 706–707.) Therefore, defendant's claim has been forfeited.

## DISPOSITION

The judgment is affirmed.

HILL, P. J.

WE CONCUR:

LEVY, J.

POOCHIGIAN, J.